## PLATO *v.* CARSON.

[No. 11,399.    Filed December 7, 1922.    Rehearing denied March 6, 1923.]

1. CONTRACTS.—*Customs and Usages.*—*Evidence.*—Parties who contract in respect to a particular business are presumed to do so with reference to any uniform practice which has so long continued as to have ripened into a usage of such business; and where the contract is silent, or terms of doubtful significance are employed, it is competent to prove such usage, so as to raise a presumption that the transaction involved was intended to conform thereto.    p. 342.

2. CONTRACTS.—*Intention of Parties.*—*Evidence.*—*Customs and Usages.*—A trade custom or usage may always be considered for the purpose of determining the intention of the parties in regard to those particulars in which they have not expressed themselves with clearness and certainty in their contract, and where words have been used which have acquired a broader or different signification in relation to the business involved than that commonly attributed to them, that fact may be shown.    p. 342.

3. CONTRACTS.— *Varying Terms.*— *Customs and Usages.*— A usage is not available for the purpose of contradicting or varying the plain and unambiguous terms of a contract, or controlling its legal effect.    p. 342.

4. CONTRACTS.—*Stipulations against Customs and Usages.*—*Effect.*—Parties have a right to contract against an existing usage, and, where the language used clearly indicates such an intention, it will be so construed.    p. 342.

5. CONTRACTS.—*Contract to Furnish Cut Stone.*—*Construction.*—*Evidence.*— *Admissibility.*— *Custom as to Measurement.*— A contract to furnish at a specified price per cubic yard all stone used in building a church, stone to be delivered at the site, cut and finished, ready to set, according to plans, does not indicate clearly the method of measurement to be employed in determining the quantity of stone furnished thereunder, and

allows the showing of a usage and custom in the state among those furnishing and using cut stone in construction work to include in the determination of quantities the gross measurement of the blocks which were necessarily used in producing the cut stone, instead of the net product remaining after the elimination of the waste portions; the language used not showing that the parties contracted against the custom as to the method of measurement in such cases. p. 343.

From Miami Circuit Court; *Albert H. Ward,* Judge.

Action by Everett A. Carson against Samuel Plato. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Albert H. Cole* and *Gus S. Condo,* for appellant.

*Walter S. Bent, Hurd J. Hurst* and *Long & Yarlott,* for appellee.

BATMAN, J.—In this action appellee recovered a judgment against appellant, which included an amount found to be due for cut stone furnished under the following written contract:

"Marion, Ind., March 15, 1916.
"Mr. Samuel Plato:
I propose to furnish for the sum of $1.24 per cubic foot all the Bedford Stone used in the Building of the Evangelical Church at Wabash, Ind. I will deliver a No. 1 Grade of Grey Stone on the ground at the Bldg. site cut and finished, ready to set, according to present plans and specifications as prepared by Samuel Plato, Architect of Marion, Ind. I agree to have the first car of stone on the ground by March 31, unless causes beyond my control prevent and the balance of the stone by April 24, unless causes beyond my control prevent same.
Respectfully submitted,
(Signed) E. A. Carson.
I accept the above proposal. Accepted Mch. 16, 1916.
(Signed) Samuel Plato."

The errors assigned are based on the actions of the court in overruling appellant's respective motions to strike out parts of the amended second paragraph of

complaint, and for a new trial, and in stating its first and third conclusions of law, on the special finding of facts.

The decisive question presented by the record in this appeal, as we view it, may be stated thus: Had appellee the right, under the contract set out above, to allege and prove a usage and custom in this state, among those furnishing and using cut stone in construction work, to include in the determination of quantities, the gross measurement of the blocks which were necessarily used in producing the cut stone involved, instead of the net product remaining after the elimination of waste portions? Appellee was accorded this right in the trial court. Appellant, in contending that this was error, asserts that the contract is unambiguous, and hence its terms cannot be controlled by custom; that, if such a custom existed, it is not available to appellee, as he evidently waived any rights he might otherwise have had thereunder, by executing the instrument in suit, in which he clearly contracted against the same.

The law involved in the question before us is well settled, and may be stated as follows: Parties, who contract in respect to particular business, are presumed to do so with reference to any uniform practice, which has been so long continued as to have ripened into a usage of such business; and where the contract is silent, or terms of doubtful significance are employed, it is competent to prove such usage, so as to raise a presumption that the transaction involved was intended to conform thereto. Such a usage may always be considered for the purpose of determining the intention of the parties in those particulars in which they have not expressed themselves with clearness and certainty in their contract; and, where words have been used, which have acquired a broader or different signification in relation to the business involved, than that

commonly attributed to them, that fact may be shown. On the other hand, a usage is not available for the purpose of contradicting or varying the plain and unambiguous terms of a contract, or controlling its legal effect. Parties have a right to contract against an existing usage, and, where the language used clearly indicates such an intention, it will be so construed. *The Van Camp Packing Co.* v. *Hartman* (1890), 126 Ind. 177, 25 N. E. 901; *Rastetter* v. *Reynolds* (1903), 160 Ind. 133, 66 N. E. 612; *Leiter* v. *Emmons* (1898), 20 Ind. App. 22, 50 N. E. 40; *Everitt, Seedsman* v. *Indiana Paper Co.* (1900), 25 Ind. App. 287, 57 N. E. 281; *Lupton* v. *Nichols* (1902), 28 Ind. App. 539, 63 N. E. 477; *Todd* v. *Howell* (1911), 47 Ind. App. 665, 95 N. E. 279; *High Wheel Auto, etc., Co.* v. *Journal Co.* (1912), 50 Ind. App. 396, 98 N. E. 442.

The law involved is clear, but the difficulty lies in its application to the contract in question. That portion with which we are concerned, as we interpret it,

5. may be restated as follows: I propose to furnish on the ground at the building site, cut and finished ready to set, according to the plans and specifications as prepared by Samuel Plato, architect of Marion, Ind., all the Bedford stone used in constructing the Evangelical Church at Wabash, Ind., the same to be a No. 1 grade of gray, at $1.24 per cubic foot. Can it be said that the contract when so interpreted, clearly indicates the method of measurement to be employed in determining the quantity of stone furnished thereunder, so as to exclude any existing custom in that regard? We are of the opinion that it does not. Without doing violence to the language used, it might be construed to mean that appellee was to receive $1.24 per cubic foot for each piece of stone that actually became a part of the building. With that construction it would have been necessary to calculate the number of cubic feet in

each piece of stone furnished, no matter how irregular in form by reason of cutting and carving. And again, without doing violence to the language used, the contract might be construed to mean that appellee was to be paid $1.24 per cubic foot for each block of stone necessary for the preparation of the finished product required. In support of this construction we call attention to the fact that the contract, as we interpret it, provides that appellee is to receive $1.24 per cubic foot for all Bedford stone used in constructing the church building in question. Now what stone was so used? Was it merely that which became a part thereof by reason of being set therein, or did it include that which was necessarily wasted in cutting the given pieces to the required form? The answer to this question is left in doubt by the language found in the contract, and hence presents a case for recourse to any existing custom of the business involved, in determining the intention of the parties in regard to the question under consideration.

Appellant, in opposing the conclusion we have stated, contends that the contract is not only unambiguous, but the language used clearly indicates an intention of the parties to contract against the custom alleged, as they had a right to do. We readily concede the existence of such right, but cannot agree that the contract shows that the parties exercised it. In fact, the language used more strongly indicates, that the parties intended that their contract should be interpreted in harmony with the alleged custom, rather than against it. To illustrate: If a tailor should agree to furnish the cloth for a garment, cut ready for the making, at a given price per yard, could it be successfully contended, that in determining the quantity of cloth for which payment should be made, that each piece composing the garment, regardless of its shape, should be separately measured,

and the aggregate amount thus obtained should be taken as the number of yards, rather than the gross number necessarily cut from the bolt for such purpose?   Again, if a lumber dealer should agree to furnish the material for a piece of furniture, to be composed in part of a number of irregular pieces, cut according to given patterns, at a specified price per foot, would it be reasonable to contend that in determining the number of feet for which payment should be made, that each piece should be separately measured, and the net total thus obtained should be taken as the quantity furnished, without considering the gross amount necessarily used because of unavoidable waste?   It is clear that in neither instance would the actual net measurements of the several pieces furnished be taken as the basis for payment.

For the reasons stated we are of the opinion that the court did not err in overruling appellant's motion to strike out parts of the amended second paragraph of the complaint, relating to the alleged custom as to the method of measurement, or in the admission of evidence tending to establish the same, or in stating its conclusions, based on the existence thereof, as found.   When effect is given to the alleged custom, we cannot say that the amount of recovery is too large, as appellant contends.   We fail to find reversible error in any action of the court of which complaint is made, and the judgment is, therefore, affirmed.